Sample v. Hale.

SAMPLE & SON V. A. J. HALE ET AL.

[FILED MARCH 16, 1892.]

**Public Buildings.** CONTRACTOR'S BOND TO PAY LABORERS: ULTRA VIRES: SURETIES. The state, when constructing a public building, is chargeable with a moral duty to protect the persons who furnish labor and material for the erection of the building as far as possible. Therefore a provision in a contract for the erection of such building by which the contractor " agrees to pay off and settle in full, with the parties entitled thereto, all accounts and claims that may become due by reason of laborers' and mechanics' wages or for materials furnished or services rendered, so that each and all persons may receive his or their just dues in that behalf," is not in excess of the powers of the board of public lands and buildings, and the sureties on the contractor's bond for the faithful performance of the contract will be liable for debts arising under the above provision.

ERROR to the district court for Lancaster county. Tried below before FIELD, J.

*Leese, Stewart & Rose*, for plaintiffs in error:

The board of public lands and buildings had power to make the contract, and require the bond. (*Knapp v. Swaney*, 23 N. W. Rep. [Mich.], 163; *Baker v. Bryan*, 64 Ia., 561). Plaintiff could maintain the action in his own name on the bond and contract. (*Shamp v. Meyer*, 20 Neb., 223; *Baker v. Bryan*, 64 Ia., 561; *Emmett v. Brophy*, 42 O. St., 82.)

*J. L. Caldwell, contra:*

The board had no right to insert into the contract the provision to pay for materials and laborers' wages. (*Secrest v. Barbee*, 17 O. St., 426; *Cutler v. Roberts*, 7 Neb., 13; *Thomas v. Port Huron*, 27 Mich., 320; *Port Huron v. McCall*, 46 Id., 565.) Plaintiffs cannot maintain this action, and the contract was not made for their benefit. (*Albertson v. State*, 9 Neb., 435; *Hunter v. Comr's*, 10 O. St., 515; *Crowell v. Currier*, 27 N. J. Eq., 152; *Wise v. Fuller*, 2 Stewart [N. J. Eq.], 261; *Trotter v. Hughes*, 12 N. Y., 74; *Gowen v. Klous*, 101 Mass., 454; *People v. Mead*, 24 N. Y., 114; *Com'rs v. Perry*, 5 O., 64; *Price v. Doyle*, 34 Minn., 400; 1 Parsons, Contracts, 471; *Nichols v. Buckam*, 117 Mass., 488; *State v. Perry*, Wright [O.], 662; *Lang v. Pike*, 27 O. St., 500; *State v. Medary*, 17 O., 565; *Hart v. State*, 120 Ind., 83; *Mittnacht v. Kellermann*, 105 N. Y., 467; *Faurote v. State*, 110 Ind., 463.

MAXWELL, CH. J.

On the 10th of December, 1887, the board of public lands and buildings awarded to John Layne the contract for the erection of the industrial home at Milford for the agreed price of $14,900. The contract is as follows:

"This contract, made and entered into this 10th day of December, 1887, by and between John Layne, of Lancas-

ter county, Nebraska, party of the first part, and the state
of Nebraska, by the board of public lands and buildings
acting for and in behalf of said state, party of the second
part, witnesseth:

"That for and in consideration of the payments to be
made as hereinafter set forth by the said party of the sec-
ond part, the said party of the first part hereby agrees to
furnish all materials and labor necessary for the construc-
tion and to erect, build, and entirely complete one two-
story brick building with stone basement and steam
heating and plumbing for same, for industrial home at
Milford, Nebraska, according to the plans, specifications,
and detail drawings prepared by Blake & Co., architects,
for said building, and adopted by the board of public lands
and buildings. Said plans, specifications, and detail draw-
ings are now on file in the office of the commissioners of
public lands and buildings, and together with the propo-
sals of said first party to build said building, and the law
authorizing the erection of said building, approved March
31st, 1887, are hereby made a part of this contract. And
the said party of the first part further agrees that all the
materials used in the erection of said building shall be of
the best quality, and that all work shall be done in a good
workmanlike manner, and that the said building and the
steam heating and plumbing for the same shall all be done
and completed on or before the 1st day of September,
1888.

"And the first party further agrees to pay off and settle
in full, with the parties entitled thereto, all accounts and
claims that may become due by reason of laborers' and me-
chanics' wages, or for materials furnished or services ren-
dered, so that each and all persons may receive his or their
just dues in that behalf.

"And in consideration of the erection and completion of
said building and the fulfillment of the covenant and
agreement by first party as above set forth, the said party

of the second part hereby agrees to pay to the said first party the sum of $14,390 in the manner and at the times as follows, to-wit: eighty per cent of monthly estimates made by the superintendent of construction for said building when the same shall have been made and certified in writing to the board of public lands and buildings by said superintendents from month to month during the erection of said building; and the balance shall be paid when said building is fully completed according to the contract and so certified by the superintendent of construction for said building, and accepted by the board of public lands and buildings, after said first party has executed a release in writing to the state of all claims and demands on account of any and all services rendered and materials furnished on account of said building. And it is hereby further agreed and understood by the parties to this contract that at any time during the erection of said building said second party shall have the right, and is hereby allowed the privilege, of making any change or changes in the plans of said building, or anything pertaining thereto, that said second party may deem proper; *Provided, however,* That any changes that may be so made and are of such a character as to add to or detract from the contract price of said building shall be adjusted by three disinterested builders, one of whom shall be selected by the first party and one by the second party and the third by the two so selected. And if the parties so selected shall find that in consequence of said change or changes additional cost shall have been made such additional cost so made shall be added to the contract price. But if they find that the cost shall have been decreased thereby, then the decrease so found shall be deducted from the contract price of said building."

To secure compliance with the contract the defendants in error, as sureties for Layne, with him gave a bond to the state as follows:

" Know all men by these presents, that John Layne, of

Lancaster county, as principal, and A. J. Hale, Chas. A. Sweet, as sureties, are held and firmly bound unto the state of Nebraska in the penal sum of $14,390, and for the payment of which we do hereby bind ourselves, our heirs, executors, and administrators, jointly, severally, and firmly by these presents.

"Dated this 10th day of December, 1887.

"The condition of the above obligation is such, that whereas the above bounden John Layne has been awarded by the board of public lands and buildings of the state of Nebraska the contract for the erection and construction of a building for the industrial home at Milford, Nebraska, according to certain plans, specifications, and detail drawings of same as now on file in the office of the commissioners of public lands and buildings at Lincoln, Nebraska:

"Now if John Layne shall faithfully keep and perform each and every one of the stipulations and agreements contained in the contract, and at times and in the manner therein specified, then this obligation to be void, otherwise to be and remain in full force and effect in law.

"JOHN LAYNE.
"A. J. HALE.
"In presence of                    CHAS. A. SWEET.
"F. E. COOK."

The plaintiff brought this action on the bond to recover for material furnished the contractor, Layne. The case was submitted to the court upon an agreed statement of facts, and the court found the issues in favor of the defendant and dismissed the action as to the sureties. The agreed statement of facts is too long to be copied, but it is clearly shown that the plaintiffs' claim was for material for the building, and within the provisions of the clause in the contract objected to. The contention of the defendants in error is that the provisions in the contract, that " the first party further agrees to pay off and settle in full, with the parties entitled thereto, all accounts and claims that may become due by

reason of laborers' and mechanics' wages, or for materials furnished or services rendered, so that each and all persons may recover his or their just dues in that behalf," is *ultra vires*, and therefore void and not binding on the sureties. We think differently, however.   The building being one erected by the state, was therefore excepted from the mechanic's lien law. (*Ripley v. Gage County*, 3 Neb., 397; *Knapp v. Swaney*, 23 N. W. Rep. [Mich.], 164, and cases cited.)

In *Knapp v. Swaney* the sureties set up the same defense as in this case and it was held unavailing.   Judge Cooley says: "A corporation when constructing public buildings or other public work is chargeable with moral duty as an individual would be, to see that it is so constructed that people may not be injured in coming near to or making use of it in a proper manner.   In some cases they may not be legally responsible for failure to perform this duty; but where the moral obligation exists, it cannot be said that any provisions for its performance, not improper in itself, is *ultra vires*.   A county may go to great pains and great expense to make its court house unquestionably safe, that individual citizens may not suffer injuries consequent upon its construction.   But if it may do this it would be very strange if it were found lacking in authority to stipulate in the contract for the building that the contractors when calling for payment shall show that they are performing their obligations to those who supply the labor and materials, and that the county is not obtaining the building at the expense of a few of its people. We cannot think such is the case.   We are of the opinion that there was nothing *ultra vires* in this condition and that the relators are bound by it."

A similar decision had prior to that time been made by the supreme court of Iowa in *Baker v. Bryan*, 21 N. W. Rep. (Ia.), 83.   In that case the bond contained a provision similar to the one in suit in this case and it was sustained.

In the latter case it is said: "The authority to contract is general and broad enough to cover all covenants which the directors, in their wisdom, may esteem necessary or proper in order to secure the erection of the house and the protection of the interests of the district, the object for which the contract was made. If the directors of the district, in the exercise of their discretion, concluded that the work would be prosecuted with more rapidity, or would be better done, by securing subcontractors, they surely would be authorized to provide therefor. That subcontractors, knowing that they were secured, would do better work and furnish better material than if they felt uncertain about their pay, cannot be doubted. And it is equally certain that the credit which the contractor would gain by the security would enable him to prosecute the work more rapidly and with greater hope of profit. These things, it may be readily seen, would result in great benefit to the district. It therefore cannot be doubted that the law, in conferring authority upon the directors to enter into a contract and demand a bond for its faithful performance, intended that covenants to pay the claims of subcontractors, which would protect the interest of the district, could be incorporated therein. The parties for whose benefit these covenants were made may prosecute actions upon the instruments containing them. (Code, sec. 2552; *Jordan v. Kavanagh,* 18 N. W. Rep. [Ia.], 851; *Huntington v. Fisher,* 27 Ia., 276; *Rice v. Savery,* 22 Id., 470.)"

The rule is well established in this court that if one makes a promise to another for the benefit of a third person such third person may maintain an action upon such promise. (*Shamp v. Meyer,* 20 Neb., 223; *Cooper v. Foss,* 15 Id., 515; *Stewart v. Snelling,* Id., 502.)

In *Breen v. Kelly,* 47 N. W. Rep. [Minn.], 1067, the supreme court of Minnesota held in effect that there would be no recovery upon a bond like the one at bar.

The cases above cited from Iowa and Michigan are not

referred to in the opinion, and the reasoning fails to convince us of its soundness.   We have no doubt the plaintiffs have made a case entitling them to recover from the defendants.   The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.